**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**JAMES DAVID SPIERS**                                                           **PLAINTIFF**

**VERSUS**                                           **CIVIL ACTION NO.: 1:08cv1515-JMR**

**DAVID ALLISON, Sheriff of Pearl River County;
and STEVE GARBER, Sheriff of Hancock County**                **DEFENDANTS**

___

### MEMORANDUM OPINION:

This matter is before the Court pursuant to a Motion [37-1] for Summary Judgment filed on behalf of the Defendant, Steve Garber and a Motion [39-1] to Dismiss or in the Alternative for Summary Judgment and Qualified Immunity filed on behalf of the Defendant, David Allison. Both motions are accompanied by Memoranda [38-1, 40-1] in Support thereof. Furthermore, Defendant Garber joined in Defendant Allison's motion on November 23, 2009. To date, Plaintiff has not filed any Response in Opposition. The Court being fully advised in the premises, and after carefully considering the pleadings filed as a matter of record, along with the applicable law, finds that Defendant Garber's Motion [37-1] for Summary Judgment as well as Defendant Allison and Garber's Motion [39-1] to Dismiss or in the Alternative for Summary Judgment and Qualified Immunity should be granted. Accordingly, all claims against Defendant Allison and Defendant Garber should be dismissed with prejudice.

### STATEMENT OF THE CASE:

Plaintiff filed this *pro se* § 1983 action against Sheriff's David Allison and Steve Garber (collectively hereinafter "Defendants") alleging that he suffered violations of his constitutional rights

while being detained as a pretrial detainee at the Pearl River County Jail ("PRCJ").[1]

## **FACTS:**

Plaintiff was arrested on a charge of Murder by the Hancock County Sheriff's Department. On October 30, 2007, he was booked and detained at the PRCJ to await trial on the pending charge. On December 29, 2008, Plaintiff filed his original Complaint [1-1] against the Defendants.

In his Complaint, Plaintiff alleges that numerous problems plague the PRCJ, and contends that their cumulative effect violates his right to Due Process under the Fourteenth Amendment. The Court notes that the majority of Plaintiff's pleadings are dedicated to challenging the conditions of his confinement at the PRCJ. For instance, Plaintiff alleges that the PRCJ is kept in unsanitary conditions due to the facility's failure to properly clean the premises. Plaintiff alleges that, prior to being painted, the walls of the facility were covered in mold. Plaintiff also alleges that the facility is not cleaned on weekends and that there is standing water in the shower and leaking toilets.

Plaintiff also alleges that the PRCJ is operated in a manner such that it denies him due process. Plaintiff alleges that his meals are frequently served cold and that the drinking water is not clean. Also, Plaintiff claims the telephone does not work properly. Plaintiff further contends that he is only allowed to go outside occasionally. Plaintiff also alleges that his mail is mishandled and thus does not receive all of his incoming mail.

Plaintiff makes allegations of various episodic acts and omissions by the PRCJ staff. First, Plaintiff alleges that the PRCJ medical staff provides inadequate medical care. Specifically, Plaintiff has claimed that he was not properly provided a tuberculosis test upon being admitted to the PRCJ.

---

[1] Plaintiff was a prisoner of the Hancock County Sheriff's Department as he had a murder charge pending in the Circuit Court of Hancock County. However, he was being housed at the Pearl River County Jail pursuant to an agreement by both counties, due to the destruction of the Hancock County Jail by Hurricane Katrina. (*See* Mem. [38-1] Mot. Summ. J.)

Furthermore, Plaintiff disagrees with the diagnosis of an injury he sustained to his ankle. Also, Plaintiff alleges that he was subjected to mental and physical abuse by officers at the PRCJ.

## **STANDARD OF REVIEW:**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c). "The mere existence of a factual dispute does not by itself preclude the granting of summary judgment." *St. Amant v. Benoit*, 806 F.2d 1294, 1296-97 (5th Cir. 1987). "The requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). In other words, "[o]nly disputes over the facts that might effect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* Furthermore, it is well settled in this circuit that "[b]are bones allegations are insufficient to withstand summary judgment because the opposing party must counter factual allegations by the moving party with specific, factual disputes; mere general allegations are not a sufficient response.'" *Howard v. City of Greenwood*, 783 F.2d 1311, 1315 (5th Cir. 1986) (*quoting Nicholas Acoustics Specialty Co. v. H & M Constr. Co.*, 695 F.2d 839, 845 (5th Cir. 1983)).

In considering a motion for summary judgment, the trial court views the evidence in the light most favorable to the party resisting the motion. *See Howard v. City of Greenwood*, 783 F.2d 1311, 1315 (5th Cir. 1986). To survive summary judgment, the non-movant must demonstrate the existence of a disputed issue of material fact. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48 (1986). To avoid the entry of summary judgment, the non-moving party must bring forth significant probative evidence demonstrating the existence of a triable issue of fact. *See Howard*, 783 F.2d at

1315.

42 U.S.C. § 1983 imposes liability upon any person who, acting under the color of state law, deprives another of federally protected rights. Therefore, section 1983 affords a remedy to those who suffer, as a result of state action, deprivation of rights, privileges, or immunities secured by the Constitution and the Laws of the United States. *White v. Thomas*, 660 F. 2d 680,693 (5th Cir. 1981). A plaintiff cannot succeed merely by showing any deprivation of his rights. Section 1983 was intended to protect rights protected by federal law. *Karmi-Panahi v. Los Angles Police Dept.*, 839 F. 2d 621 (9th Cir. 1988); *Wright v. Collins*, 766 F.2d 841 (5th Cir. 1985).

Under 42 U.S.C. § 1983, liability may be imposed upon any person who, acting under the color of state law, deprives another of federally protected rights. It neither provides a general remedy for the alleged tort of state officials, nor opens the federal courthouse doors to relieve complaints of all who suffer injury at the hands of the state or its officers. Municipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose "moving force" is the policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001); *Monell v. Dep't of Soc. Services*, 436 U.S. 658, 694 (1978). *Monell* and later decisions reject municipal liability predicated on *respondeat superior*, because the text of section 1983 will not bear such reading. *Board of Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997). "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell*, 436 U.S. at 691.

A suit against a governmental agent or officer in his official capacity is a suit against the office that the employee holds and not against the actual employee. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). The three requirements for municipal liability outlined in *Piotrowski* are necessary in order to distinguish between individual violations by local employees and those that can

be fairly attributed to conduct by the governmental entity itself. *See Piotrowski*, 237 F.3d at 578-79. The United States Supreme Court has clearly emphasized the necessity of an official policy as a predicate to recovery under a theory of municipal liability:

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Monell*, 436 U.S. at 695. Therefore, municipalities may not be held liable for acts of lower level employees, but may be held liable for constitutional violations committed pursuant to an official policy or custom. *Piotrowski*, 237 F.3d at 578.

In addition, not only must the plaintiff establish that a policy or custom of the municipality was the "moving force" behind the alleged violation of a constitutional right; he must also establish that the municipality was "deliberately indifferent" to the known consequences of the policy. *Id.* at 580; *See Lawson v. Dallas County*, 286 F.3d 257, 264 (5th Cir. 2002) ("[T]he municipality must maintain its official policy with deliberate indifference to a constitutionally protected right."). Deliberate indifference is an objective standard which encompasses "not only what the policymaker actually knew but what he should have known, given the facts and circumstances surrounding the official policy and its impact on the plaintiff's rights." *Lawson*, 286 F.3d at 264. The Fifth Circuit has noted that the plaintiff bears an "extremely heavy burden" in establishing both the municipality's deliberate indifference and a causal link between the alleged custom and the alleged constitutional violation. *Peters v. City of Biloxi*, 57 F.Supp. 2d 366, 376 (S.D. Miss. 1999). *See Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998); *Piotrowski*, 237 F.3d at 580 (stating that these two requirements "must not be diluted").

**ANALYSIS:**

As a pretrial detainee, Plaintiff's constitutional rights flow from the Fourteenth Amendment Due Process Clause rather than the Eighth Amendment prohibition against cruel and unusual punishment. Because they have not yet been convicted of the crime with which they are charged, pretrial detainees have a due process right not to be punished for that crime. *Bell v. Wolfish,* 441 U.S. 520, 535 (1979). The Supreme Court has stated the distinction between conditions that may be constitutionally imposed on convicted prisoners and conditions that may be imposed on pretrial detainees as follows:

> [T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law. **Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment.**

*Ingraham v. Wright,* 430 U.S. 651, 671-72 (1977) (emphasis added).

The appropriate standard to apply in analyzing constitutional challenges by pretrial detainees depends on whether the alleged unconstitutional conduct is a "condition of confinement"[2] or an "episodic act or omission." *See Scott v. Moore,* 114 F.3d 51, 53 (5th Cir.1997) (en banc). The Fourteenth Amendment protects pretrial detainees from the imposition of conditions of confinement

---

[2] The following were deemed to be conditions-of-confinement cases: *Murphy v. Walker,* 51 F.3d 714 (7th Cir.1995) (revocation of telephone, television, and cigarette privileges); *Collazo-Leon v. United States Bureau of Prisons,* 51 F.3d 315 (1st Cir.1995) (disciplinary segregation and denial of telephone and visitation privileges); *United States v. Millan,* 4 F.3d 1038 (2d Cir.1993) (length of pre-trial detention); *Hause v. Vaught,* 993 F.2d 1079 (4th Cir.1993) (restriction on mail privileges); *Brogsdale v. Barry,* 926 F.2d 1184 (D.C.Cir.1991) (overcrowding); *Lyons v. Powell,* 838 F.2d 28 (1st Cir.1988) (22-23-hour confinement and placement of mattress on floor); *Fredericks v. Huggins,* 711 F.2d 31 (4th Cir.1983) (policy of refusing detainees access to drugs for rehabilitation); *Lareau v. Manson,* 651 F.2d 96 (2d Cir.1981) (overcrowding).

that constitute "punishment." *Hamilton v. Lyons,* 74 F.3d 99, 103 (5th Cir.1996). "Punishment" may be loosely defined as "a restriction or condition that is not reasonably related to a legitimate goal-if it is arbitrary or purposeless." *Bell*, 441 U.S. at 539. "Reasonably related" means that the restriction is (1) rationally related to a legitimate governmental purpose, and (2) not excessive in relation to that purpose. *Id.* at 561. "[T]his test is deferential to jail rulemaking; it is in essence a rational basis test of the validity of jail rules." *Hare v. City of Corinth, Miss.,* 74 F.3d 633, 646 (5th Cir.1996).

When a pre-trial detainee alleges unconstitutional conduct which involves an episodic act or omission, the question is whether the state official acted with deliberate indifference to the inmate's constitutional rights. *Gibbs v. Grimmette,* 254 F.3d 545, 548 (5th Cir. 2001). When the alleged constitutional violation is a particular act or omission by an individual that points to a derivative policy or custom of the municipality, the deliberate indifference standard is also appropriate. *Scott,* 114 F.3d at 53-54. To prove deliberate indifference, a pretrial detainee must show that the state official knew of and disregarded an excessive risk to the inmate's health or safety. *See Stewart v. Murphy,* 174 F.3d 530, 534 (5th Cir.1999).

The Court notes that Plaintiff's Complaint alleges both unconstitutional conditions of confinement and episodic acts or omissions. Therefore, the Court shall address the two categories of allegations individually.

**I. Conditions of Confinement:**

Plaintiff alleges that Defendants are officially liable because they failed to remedy the allegedly unconstitutional conditions at the PRCJ. The Court notes that Plaintiff's official capacity claims against Defendants are, in reality, a claim against the offices which they occupied at the time of the alleged incident and, ultimately, Pearl River County and Hancock County. Therefore, to the extent Plaintiff brings this action against Defendants in their official capacities, he must establish

a constitutional violation, and in addition must satisfy the three requirements necessary to impose municipal liability: that the PRCJ had an official policy, practice or custom which would subject it to section 1983 liability; that the official policy is linked to the constitutional violation(s); and that the official policy reflects the PRCJ's deliberate indifference to that injury. *See Lawson*, 286 F.3d at 263.

The majority of Plaintiff's Complaint is dedicated to challenging the constitutionality of his conditions of confinement at the PRCJ. However, other than the previously noted allegations of unconstitutional conditions, Plaintiff presents no evidence that an official policy of the PRCJ was responsible for the alleged violation of his constitutional rights. The Court finds that such bare allegations, without more, are simply insufficient to support a claim that there existed a policy or custom which was the moving force behind any alleged constitutional violation. At best, Plaintiff's assertions amount to isolated instances of negligent conduct, which are insufficient to support the instant official capacity claim against Defendants. Accordingly, the Court recommends that summary judgment be granted in favor of Defendants on Plaintiff's official capacity claims as they relate to the conditions of the PRCJ.

Additionally, the Court notes that Plaintiff does not specify whether his claims are against Defendant Allison and Defendant Garber in their individual capacities, their official capacities, or both. Because *pro se* complaints must be construed liberally, the Court will interpret Plaintiff's Complaint to allege claims against Defendant Allison and Defendant Garber in both their individual and official capacities. *See Williams v. Love,* 2006 WL 1581908, *5 (S.D.Tex. 2006). However, because the Defendants are law enforcement officials, they may raise the defense of qualified immunity. *See Gagne v. City of Galveston*, 805 F.2d 558, 559 (5th Cir. 1986).

In assessing a claim of qualified immunity, the determination must first be made as to

whether the plaintiff has alleged a violation of a clearly established constitutional right. *Siegert v. Gilly*, 500 U.S. 226, 231 (1991). As a pretrial detainee, Plaintiff has a constitutional right not to be punished for the crimes with which he has been charged. Therefore, to the extent that Plaintiff seeks to establish § 1983 liability against the Defendants, Plaintiff must offer proof that the conditions at the PRCJ were imposed as a form of punishment. *Hamilton,* 74 F.3d at 103. A punitive purpose can be established by direct evidence of intent by detention facility officials to punish the pretrial detainee. *Bell,* 441 U.S. at 538. Alternatively, a punitive purpose may be inferred if the challenged condition is not reasonably related to a legitimate governmental objective. *Id.* at 539. With this standard in mind, the Court notes that Plaintiff has not filed any germane pleadings in this civil action since the filing of his Complaint. Nor did Plaintiff, in his brief Complaint, even allege that any of the unconstitutional conditions were imposed as a form of punishment.

Plaintiff's allegations concerning the cleanliness of the PRCJ facilities do not rise to the level of constitutional violations. Plaintiff alleges that the walls of the PRCJ were covered in mold before being painted. However, Plaintiff acknowledges that PRCJ staff painted over the walls in an attempt to improve their condition. Additionally, Plaintiff alleges that PRCJ staff does not clean the jail on the weekends, that there is standing water in the shower, and that some toilets leak. Despite these allegations, the Court notes that Plaintiff offers no evidence that the Defendants maintain the facility in this manner as a form of punishment. Also, the Court notes that Plaintiff never submitted one grievance form complaining of any of the alleged unsanitary conditions. (*See* Ex. "C" Attach. [43-1] Mot. Summ. J.) Furthermore, the evidence is clear that Defendant Allison tries to maintain the PRCJ in a serviceable condition. Although the facilities are not kept to Plaintiff's liking, "there is . . . a *de minimis* level of imposition with which the Constitution is not concerned." *Bell*, 441 U.S. at 539 (citing *Ingraham v. Wright*, 430 U.S. 651, 674 (1977)).

Plaintiff alleges that he was only allowed to "[go] outside occasionally." (*See* Pl.'s Compl. [1-1].) However, the Court finds that Plaintiff's contention is not supported by any evidence presented. The Court notes that Plaintiff has submitted no direct evidence to indicate that he was ever denied a recreation period as a form of punishment. Further, Plaintiff has presented no evidence to establish that the alleged infrequency of his yard calls or recreation periods were not reasonably related to a legitimate penalogical interest such as assuring inmate security. This ambiguous allegation alone does not rise to an actionable claim.

Plaintiff's allegations concerning the quality of the food served at the PRCJ also fail to state a constitutional claim. Plaintiff's complaints are that the food is served cold and the drinking water is not clean. However, Plaintiff has offered no evidence or even made an allegation that the food and water at the PRCJ is served in the alleged manner as a form of punishment. Plaintiff offers nothing more than the stated assertions in his complaint. These issues do not rise to an actionable claim.

Plaintiff's remaining allegations concerning the conditions of confinement at the PRCJ include that the facility telephone barely works, that he has no communication with legal counsel, and that his mail is mishandled. However, Plaintiff has not claimed that his ability to prepare or transmit necessary legal documents has been affected by these alleged conditions. Nor does he allege that his mail has been censored. At the Omnibus Hearing held on October 28, 2009, Plaintiff claimed that there has been some instances where his incoming legal mail has been opened. (*See* Hr'g Tr. [34-1].) Even if true, however, the Fifth Circuit has held that "the violation of the prison regulation requiring that a prisoner be present when his incoming legal mail is opened and inspected is not a violation of a prisoner's constitutional rights." *Brewer v. Wilkinson*, 3 F.3d 816, 825 (5th Cir. 1993). Accordingly, Plaintiff has failed to establish a violation of a clearly recognizable

constitutional right.

Furthermore, Plaintiff's allegations regarding the alleged lack of communication with legal counsel is insufficient to state a constitutional claim. The Court notes that inmates have a right of access to a law library or legal assistance. *Degrate v. Godwin*, 84 F.3d 768, 769 (5th Cir. 1996). However, in order for Plaintiff to succeed in an access to the courts claim, he must show actual injury, which includes evidence proving that the denial of legal resources hindered his efforts to pursue a non frivolous case. *See McDonald v. Steward,* 132 F.3d 225, 230-31 (5th Cir. 1998). In the present instance, Plaintiff has presented no evidence that the facility's conditions prejudiced or harmed his pursuit of this or any legal matter. This issue is does not rise to an actionable claim.

After a careful analysis of Plaintiff's allegations concerning the conditions of his confinement at the PRCJ, the Court finds that Defendant Allison and Defendant Garber are entitled to qualified immunity as to Plaintiff's individual capacity claims. Plaintiff has failed to provide any direct evidence that either Defendant imposed any of the alleged conditions as a punitive measure. Furthermore, Plaintiff has failed to submit any evidence tending to prove that the alleged conditions were not reasonably related to a legitimate governmental interest. Therefore, Plaintiff has failed to establish a violation of a clearly recognizable constitutional right.

## II.  Episodic Acts and Omissions:

In addition to the allegations concerning the conditions of the PRCJ, Plaintiff also alleges that Defendant Allison and Defendant Garber are liable for various episodic acts and omissions which constituted deliberate indifference to his constitutional rights. As stated earlier, Plaintiff does not specify whether his claims against Defendants are in their official capacities, their individual capacities, or both. Because *pro se* complaints are to be construed liberally, the Court will interpret Plaintiff's Complaint to allege claims against Defendants in both their individual and official

capacities. *See Gagne*, 805 F.2d at 559.

A. Denial of Adequate Medical Treatment:

In his Complaint, Plaintiff alleges "improper medical care." When questioned at the Omnibus Hearing held on October 28, 2009, as to what Plaintiff meant by "improper medical care," he informed the Court that he disagreed with the diagnosis of an ankle injury he received and claims that he was improperly tested for tuberculosis. (*See* Hr'g Tr. [34-1].) Plaintiff's official capacity claims against Defendants are, in reality, a claim against the offices which they occupied at the time of the alleged incident and, ultimately, Pearl River County and Hancock County. Therefore, to the extent Plaintiff brings this action against Defendant Allison and Defendant Garber in their official capacities, he must establish a constitutional violation, and in addition must satisfy the three requirements necessary to impose municipal liability: that the PRCJ had an official policy, practice or custom which would subject it to section 1983 liability; that the official policy is linked to the constitutional violation(s); and that the official policy reflects the PRCJ's deliberate indifference to that injury. *See Lawson*, 286 F.3d at 263.

Other than the above mentioned allegations of inadequate medical care, Plaintiff presents no evidence that an official policy of the PRCJ existed which violated his constitutional rights. The Court finds that such bare allegations, without more, are simply insufficient to support a claim that there existed a policy or custom which was the moving force behind any alleged constitutional violation. At best, Plaintiff's assertions amount to isolated incidents of negligent conduct, which, by themselves, are insufficient to support the instant official capacity claims against Defendants.

Plaintiff's Complaint also seeks liability against Defendants in their individual capacities. In response, Defendant Allison and Defendant Garber have pled the defense of qualified immunity. In assessing a claim of qualified immunity, the determination must first be made as to whether the

plaintiff has alleged a violation of a clearly established constitutional right. *Siegert,* 500 U.S. at 231. When an alleged constitutional violation for failure to provide adequate medical care stems from an episodic act or omission, the question is whether the state official acted with deliberate indifference to the individual's constitutional rights. *Gibbs*, 254 F.3d at 548. In order to prove deliberate indifference to serious medical needs, and thus a constitutional violation, a prisoner must show that the state official knew of and disregarded an excessive risk to inmate health or safety. *See Stewart v. Murphy*, 174 F.3d 530, 534-35 (5th Cir. 1999).

Deliberate indifference is more than mere negligence in providing or failing to provide medical treatment. *See Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993); *Williams v. Treen*, 671 F.2d 892, 901 (5th Cir. 1982). The law is clear that unsuccessful medical treatment, mere negligence, neglect, nor medical malpractice gives rise to a section 1983 cause of action. *See Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). Furthermore, disagreement with medical treatment alone is insufficient to support a claim under section 1983. Rather, "the plaintiff must show that the 'officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would evince a wanton disregard for any serious medical needs.'" *Domino v. Tex. Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)(quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)).

Defendants contend, and the Court agrees, that Plaintiff has failed to meet his burden of establishing that Defendants were deliberately indifferent to his serious medical needs. Plaintiff's primary claim is that an ankle injury he suffered while climbing into bed was misdiagnosed following an x-ray from the Highland Community Hospital. However, as stated earlier, disagreement with medical treatment is insufficient to support a section 1983 claim, rather, "the plaintiff must show that the 'officials refused to treat him, ignored his complaints, intentionally

treated him incorrectly, or engaged in any similar conduct that would evince a wanton disregard for any serious medical needs.'" *Id.* The evidence of record indicates that every sick-call request Plaintiff submitted was responded to by the staff at the PRCJ. (*See* Ex. "C" Attach. [43-1] Mot. Summ. J.) Plaintiff has failed to submit any evidence showing any alleged inattention by Defendants that amounted to deliberate indifference to an excessive risk to his safety or health. Furthermore, Plaintiff acknowledges that he was seen and examined by the medical staff, however, he merely did not agree with their treatment. (*See* Hr'g Tr. [34-1].) This issue does not rise to an actionable claim.

Plaintiff also asserts that he was not properly administered a tuberculosis test upon his entry into the PRCJ. Defendants note that Plaintiff was tested for tuberculosis on November 12, 2007, and the test was negative. (*See* Ex. "C" Attach. [43-1] Mot. Summ. J. 97-8.) Plaintiff has failed to offer any evidence that Defendants were deliberately indifferent to any risk of his health or safety. Furthermore, the Court is unaware of any constitutional right to be tested for tuberculosis, and therefore finds that Plaintiff has failed to establish a violation of a clearly recognizable constitutional violation.

B. Excessive Force:

Plaintiff's Complaint also makes allegations regarding instances of violence involving the employees of the PRCJ. Specifically, Plaintiff alleges in his Complaint that he was "mentally and physical[ly] abuse[d]" by PRCJ officers. At the Omnibus Hearing, Plaintiff informed the Court that he was never assaulted, but just "treated like a dog." (*See* Hr'g Tr. [34-1] 6.) Plaintiff asserts that Defendants are liable in both their individual and official capacities for these alleged incidents.

Plaintiff's official capacity claims against Defendants are, in reality, claims against the offices which they occupied at the time of the alleged incident and, ultimately, Pearl River County and

Hancock County. Therefore, to the extent Plaintiff brings this action against Defendants in their official capacities, he must establish a constitutional violation, and in addition must satisfy the three requirements necessary to impose municipal liability: that the PRCJ had an official policy, practice or custom which would subject it to section 1983 liability; that the official policy is linked to the constitutional violation(s); and that the official policy reflects the PRCJ's deliberate indifference to that injury. *See Lawson*, 286 F.3d at 263.

Other than the above allegations of incidents of allegedly unconstitutional conduct, Plaintiff presents no evidence that an official policy of the PRCJ existed which violated his constitutional rights. The Court finds that such bare allegations, without more, are simply insufficient to support a claim that there existed a policy or custom which was the moving force behind any alleged constitutional violation. Plaintiff has presented no evidence that Defendants were involved in the alleged abuses against him or was even aware that they had occurred. At best, Plaintiff's assertions amount to isolated incidents of negligent conduct, which, by themselves, are insufficient to support the instant official capacity claim against Defendants.

To the extent that Plaintiff seeks to hold Defendant Allison or Defendant Garber liable in their individual capacity, Defendants assert that they are entitled to the defense of qualified immunity. Also, Defendants note that Plaintiff has not alleged that they were even present during any alleged instance of abuse, let alone that either of them took part in said abuse. As the Supreme Court reiterated in *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1952, 173 L. Ed. 2d 868, 887 (2009), in cases similar to the case *sub judice*, where the doctrine of *respondeat superior* is inapplicable, a defendant cannot be held liable unless he himself acted on account of a constitutionally protected characteristic. Since "vicarious liability is inapplicable to... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.*

at 1948, 173 L. Ed. 2d 868 (2009). "A Complaint must state a claim that is plausible on its face." *Id.* at 1949-50, 1953, 173 L. Ed. 2d 868 (2009); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). As was the case in *Iqbal*, here the Plaintiff's Complaint does not contain any factual allegations sufficient to plausibly suggest Defendants themselves violated a constitutional right of the Plaintiff. Therefore, Plaintiff's pleadings do not meet the standard necessary to comply with Federal Rule of Civil Procedure 8 and subject Defendants to liability in their individual capacities.

However, out of an abundance of caution, the Court will analyze Defendants' claim of qualified immunity. In assessing a claim of qualified immunity, the determination must first be made as to whether the plaintiff has alleged a violation of a clearly established constitutional right. *Siegert*, 500 U.S. at 231. Plaintiff has provided no names of witnesses who may have observed these alleged instances of abuse and he identifies no specific individuals who perpetuated these alleged instances of abuse. Finally, the Court notes that there is a conspicuous absence of any medical requests, sick call slips, or grievances seeking medical treatment for any injuries sustained from the alleged instances of abuse. While Plaintiff alleges he was treated like a dog, Plaintiff does not present any evidence that he suffered any physical injury. The Court notes that § 1983 imposes liability only for violations of constitutional rights, and not merely for violations of duties of care arising under tort law. Thus, not every injury caused by a state official is actionable under § 1983. *Hinojosa v. City of Terrell, Tex.*, 834 F.2d 1223, 1229 (5th Cir. 1988); *Mark v. Caldwell*, 754 F.2d 1260, 1261 (5th Cir. 1985) (recognizing that § 1983 does not provide a cause of action for every injury wrongfully inflicted by a state officer). Accordingly, § 1983 remedies are limited to official conduct that (1) caused some meaningful injury, (2) was grossly disproportionate to the need presented, and (3) was motivated by malice. *Hinojosa*, 834 F.2d 1229. Therefore, the Court is left to conclude that Plaintiff has failed to

create a genuine issue as to whether he suffered a violation of his constitutional rights.

Assuming, *arguendo*, that Plaintiff has raised a genuine issue as to whether his constitutional rights were violated, the Court finds that Plaintiff has presented no evidence of any unreasonable conduct on behalf of Defendant Allison or Defendant Garber. Even if the conduct violates a constitutional right, qualified immunity is applicable if the conduct was objectively reasonable. *Hare v. City of Corinth, Miss*, 135 F.3d 320, 327 (5th Cir. 1998). In order to overcome the bar of qualified immunity, Plaintiff must allege that Defendants' conduct was objectively unreasonable in response to how Plaintiff was treated.

The Court notes that Plaintiff has presented no evidence that Defendants were involved in any of these alleged instances of abuse or was even aware that they had occurred. It appears that Plaintiff seeks to establish Defendants' liability based on the conduct of PRCJ employees. However, the doctrine of *respondeat superior* is inapplicable in Section 1983 cases. *Williams v. Luna*, 909 F.2d 121, 123 (5th Cir. 1990). Therefore, because Plaintiff is unable to present any evidence of Defendants' personal involvement in the alleged treatment of abuse, any evidence of Defendants' knowledge of the conduct of their employees, or any other unreasonable conduct on behalf of Defendants, the Court finds that Defendant Allison and Defendant Garber are entitled to qualified immunity against Plaintiff's individual capacity claims.

Although he has not presented any evidence that he suffered any physical injuries from his treatment while incarcerated at the PRCJ, Plaintiff contends that he was mentally abused. (*See* Pl.'s Compl. [1-1].) However, pursuant to the Prison Litigation Reform Act, "no federal civil action may be brought by a prisoner... for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). If a prisoner cannot provide evidence of a physical injury, the PLRA bars recovery for mental and emotional damages. *See Harper v. Showers*,

174 F.3d 716, 719 (5th Cir. 1999). In order to determine whether a prisoner has sustained the necessary physical injury to support a claim for mental or emotional suffering, the "injury must be more than *de minimis*, but need not be significant." *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997). As noted above, Plaintiff has not presented any evidence that he suffered a physical injury and thus he is barred by the PLRA from seeking psychological damages. Accordingly, the Court finds that Plaintiff has failed to establish that he suffered a violation of any cognizable constitutional right as a result of any treatment or abuse by an employee of PRCJ.

The Court also finds that to the extent Plaintiffs' complaint could be construed to allege claims under state law, they are barred by provisions contained in the Mississippi Tort Claims Act, MISS. CODE ANN. § 11-46-1, *et seq*. Specifically, the Act provides that a government subdivision shall not be liable for a claim "of any claimant who at the time the claim arises is an inmate of any detention center, jail, workhouse, penal farm, penitentiary, or other such institution regardless of whether such claimant is or is not an inmate . . . when the claim is filed." MISS. CODE ANN. § 11-46-9(1)(m). The Court finds that because Plaintiff was an inmate at the time these events allegedly occurred, any claims arising under Mississippi law as a result of these alleged events are barred by the above provision.

## CONCLUSION:

After considering the evidence of record, the Court concludes that Plaintiff has failed to create a genuine issue as to whether Defendants violated Plaintiff's constitutional rights during his incarceration as a pretrial detainee at the PRCJ. Plaintiff has presented no evidence indicating that the alleged conditions of confinement were imposed by Defendants for a punitive purpose. Further, Plaintiff's allegations that he was denied adequate medical care do not rise to the level of constitutional violations. Finally, Plaintiff's allegations that he was subjected to excessive force at

the hands of PRCJ officers are conclusory and unsupported by any probative evidence. Accordingly, the Court finds that Defendants are entitled to summary judgment, and Plaintiff's official and individual capacity claims should be dismissed with prejudice.

**SO ORDERED** this the ___8th___ day of January, 2010.

                                            _s/ John M. Roper, Sr._
                                      CHIEF UNITED STATES MAGISTRATE JUDGE